**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LLOYD'S SYNDICATE 3624 (HISCOX), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 18-cv-115 |
| | ) | |
| BIOLOGICAL RESOURCE CENTER OF | ) | |
| ILLINOIS, LLC; ANATOMICAL SERVICES, | ) | |
| INC.; DONALD GREENE; DONALD | ) | |
| GREENE, II; MICHAEL BAUER; MELLISSA | ) | |
| WILLIAMS; and MOLLIE STATHOPOULOS, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Lloyd's Syndicate 3624 (Hiscox) ("Hiscox"), by counsel, brings this action

against Defendants Biological Resource Center of Illinois, LLC; Anatomical Services, Inc.;

Donald Greene; Donald Greene, II; Michael Bauer; Mellissa Williams; and Mollie Stathopoulos

(collectively, "BRCI") and alleges as follows:

## NATURE OF THE ACTION

1.      Hiscox is presently funding the defense of BRCI in ten lawsuits (the "Underlying

Lawsuits"), as detailed below, subject to a reservation of rights under a policy issued by Hiscox

to BRCI (the "Policy").

2.      The Policy has a $2 million "Each Claim" limit of liability and a $3 million

aggregate limit of liability for all claims.  Defense costs erode the Policy's limit of liability.

3.      The Underlying Lawsuits for which Hiscox is funding BRCI's defense are a

single claim under the Policy because the lawsuits are based upon and/or arise out of continuous,

repeated, and/or related "Wrongful Acts" allegedly committed by BRCI, as that term is defined by the Policy.

4.      Therefore, the Policy's $2 million "Each Claim" limit of liability applies to the defenses costs Hiscox has incurred defending BRCI in the ten lawsuits.  The Policy's $3 million aggregate limit of liability for all claims does not apply to the Underlying Lawsuits.

5.      Hiscox has exhausted the $2 million "Each Claim" limit of liability that BRCI is entitled to under the Policy for the ten Underlying Lawsuits.

6.      Each of the letters that Hiscox issued to BRCI regarding the Underlying Lawsuits stated that the matters arise out of a single claim and that Hiscox would only apply one deductible to all claims.  BRCI accepted Hiscox's defense for each of the Underlying Lawsuits, paid only one $5,000 deductible and, at no time, did BRCI object to Hiscox's position that the Underlying Lawsuits arise out of a single claim.

7.      Hiscox recently advised BRCI that the defense costs incurred to date defending the Underlying Lawsuits were approaching exhaustion of the $2 million per claim limit.  Hiscox further asked BRCI to contact Hiscox to discuss the transfer of the defense to BRCI.  However, BRCI advised for the first time that it believed that the $3 million aggregate limit applied, not the $2 million per claim limit.

8.      Accordingly, Hiscox seeks a declaratory judgment that Hiscox has no further duties or obligations owing to BRCI under the Policy with respect to the Underlying Lawsuits. In addition, because of BRCI's refusal to take over responsibility for the defense of the Underlying Lawsuits, Hiscox continues to fund BRCI's defense, and has paid significant sums in excess of the $2 million per claim limit.  As a result, Hiscox further requests that the Court find that BRCI has waived and/or is estopped from relying upon the aggregate limit, and award

2

Hiscox equitable relief in the form of repayment of the amounts that Hiscox has expended in excess of the per claim limit.

## PARTIES

9.     Plaintiff Lloyd's Syndicate 3624 (Hiscox) ("Hiscox") is one of several syndicates who severally underwrite insurance in the insurance market commonly known as Lloyd's of London, England.  Hiscox is wholly backed by Hiscox Dedicated Corporate Member Ltd., which is a corporation registered, domiciled, and with a principal place of business in the United Kingdom.

10.     Defendant Biological Resource Center of Illinois, LLC is an Illinois limited liability corporation licensed to do business in Illinois, with its principal place of business in Schiller Park, Illinois.

11.     Defendant Anatomical Services, Inc. was an Illinois corporation with its principal place of business in Schiller Park, Illinois.  Anatomical Services, Inc. voluntarily dissolved on or about October 31, 2014.

12.     On information and belief, Biological Resource Center of Illinois, LLC absorbed the business operations of Anatomical Services, Inc. sometime after October 31, 2014.

13.     Defendant Donald Greene is or was the owner, operator, employee, agent, officer, and/or director of Biological Resource Center of Illinois, LLC, and, on information and belief, resides in this judicial district.

14.     Defendant Donald Greene, II is or was the owner, operator, employee, agent, officer, and/or director of Biological Resource Center of Illinois, LLC, and, on information and belief, resides in this judicial district.

15.     Defendant Michael Bauer is or was the owner, operator, employee, agent, officer, and/or director of Biological Resource Center of Illinois, LLC, and, on information and belief, resides in the State of Colorado.

16.     Defendant Mellissa Williams is or was the owner, operator, employee, agent, officer, and/or director of Biological Resource Center of Illinois, LLC, and, on information and belief, resides in this judicial district.

17.     Defendant Mollie Stathopoulos is or was the owner, operator, employee, agent, officer, and/or director of Biological Resource Center of Illinois, LLC, and, on information and belief, resides in this judicial district.

18.     Hiscox is providing all defendants named in this action a defense to the Underlying Lawsuits under the Policy.

## JURISDICTION AND VENUE

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between plaintiff and defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

20.     Venue is proper pursuant to 28 U.S.C. § 1391 because Biological Resource Center of Illinois, LLC's principal place of business is in this judicial district and a substantial part of the events giving rise to this action occurred in this judicial district.

21.     An actual controversy within the meaning of 28 U.S.C. § 2201 exists among the parties regarding the coverage provided under a policy of insurance.

## BACKGROUND INFORMATION

**A.    The Underlying Lawsuits**

22.    Hiscox is paying for the defense of BRCI in the Underlying Lawsuits filed in either Illinois or Arizona under a reservation of Hiscox's rights under the Policy.

23.    The Underlying Lawsuits were filed after the FBI executed a federal search warrant on International Biological, Inc. ("ICI") in December 2013 that uncovered an illegal scheme to transport human body parts of the deceased across state and international borders for profit.

24.    The FBI's December 2013 search warrant led the FBI to ICI's primary body parts supplier: BRCI.

25.    The FBI executed a subsequent search warrant on BRCI at its locations in Cook County, Illinois in January 2015.

26.    As a result of the January 2015 search warrant executed on BRCI, the plaintiffs in the Underlying Complaints alleged that they learned that the bodies of their deceased family members were potentially mishandled, desecrated, and/or not used for the purposes for which they had agreed to allow BRCI to use the remains.  Moreover, underlying plaintiffs alleged that they learned that BRCI had potentially misrepresented and/or made false statements to the underlying plaintiffs and/or their decedents regarding BRCI's intended use of the remains and the cremated remains that BRCI later provided to the underlying plaintiffs.

27.    The Underlying Lawsuits allege that BRCI induced the underlying plaintiffs (or their respective decedents) to enter into an agreement to donate the decedents' remains for use in medical and scientific education as part of BRCI's "Willed Body Program," but BRCI, in fact, allegedly sold, mishandled, and/or desecrated the remains.

5

28.     The Underlying Lawsuits allege that BRCI represented to the donors that the bodies would be treated with dignity and respect; and the remains would not be dismembered and/or sold for profit.  Further, the Underlying Lawsuits allege that BRCI breached duties it owed pursuant to its agreement with each of the underlying plaintiffs to handle the decedents' bodies with respect and to only use the remains for medical education/research.

29.     Allegedly, as a result of information learned after the FBI executed its January 2015 search warrant against BRCI, underlying plaintiffs filed the ten Underlying Lawsuits against BRCI, among others, between May 2015 and September 2017, as set forth below.

***Dixon, et al. v. Biological Resource Center of Illinois, LLC, et al.***, **Case No. 2015 CH 8513 (Cook Cnty., IL May 28, 2015) (the "Dixon Complaint")**

30.      The Dixon Complaint is a class action lawsuit filed against BRCI, among others, in the Circuit Court of Cook County, Illinois on May 28, 2015.  A true and correct copy of the operative "Second Amended Class Action Complaint" is attached as Exhibit 1.

31.     The Dixon Complaint alleges that the underlying plaintiffs entered agreements with BRCI to donate their deceased family members' bodies to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to the decedents' families.  Dixon Cmplnt., ¶¶ 19, 39.

32.     The Dixon Complaint alleges that BRCI represented to the underlying plaintiffs that the bodies of the deceased would be treated with dignity and respect, and that the bodies would not be dismembered and/or sold for profit.  Dixon Cmplnt., ¶¶ 7, 138.

33.     The Dixon Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedents' bodies would be used with the intent to defraud the plaintiffs.  The Dixon Complaint alleges BRCI subsequently

illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with

BRCI.  Dixon Cmplnt., ¶¶ 11, 51-52.

34.     The Dixon Complaint alleges the following counts against BRCI and the other

defendants:

- Count IA: Tortious interference with a dead body;
- Count IB: Intentional infliction of emotional distress;
- Count IC: Negligent infliction of emotional distress;
- Count IIA (alternatively): Breach of contract;
- Count IIB (alternatively): Promissory estoppel;
- Count III: Claim for negligence;
- Count IV: Fraud as to signatories to the gift form;
- Count V: Conspiracy to defraud and to mishandle bodies;
- Count VI: Civil RICO § 1962(c); and
- Count VII: Violation of the consumer fraud act as to signatories to the gift form.

**_Senderak, et al. v. Biological Resource Center of Illinois, LLC, et al._, Case No. 2015 L 007143 (Cook Cnty., IL Jul. 14, 2015) (the "Senderak Complaint")**

35.     The Senderak Complaint was filed against BRCI, among others, in the Circuit

Court of Cook County, Illinois on July 14, 2015.  A true and correct copy of the Senderak

Complaint is attached as Exhibit 2.

36.     The Senderak Complaint alleges that the underlying plaintiffs entered an

agreement with BRCI to donate their deceased husband/father's body to BRCI with the

understanding that the remains would be used solely for medical education/research and any

unused portion of the remains would be cremated and returned to plaintiffs.  Senderak Cmplnt.,

¶¶ 39, 43.

37.     The Senderak Complaint alleges that BRCI represented to the underlying

plaintiffs that the body of the deceased would be treated with dignity and respect, and that the

body would not be dismembered and/or sold for profit.  Senderak Cmplnt., ¶ 40.

38.     The Senderak Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedent's body would be used with the intent to defraud plaintiffs.  The Senderak Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI.  Senderak Cmplnt, ¶ 25; Count IV, ¶ 47.

39.     The Senderak Complaint alleges the following counts against BRCI and other defendants:

- Count I: Intentional infliction of emotional distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud;
- Count V: Violation of the Illinois Consumer Fraud Act; and
- Count VI: Civil conspiracy.

***Hayes, et al. v. Biological Resource Center of Illinois, LLC, et al.*, Case No. 2015 L 007144 (Cook Cnty., IL Jul. 14, 2015) (the "Hayes Complaint")**

40.     The Hayes Complaint was filed against BRCI, among others, in the Circuit Court of Cook County, Illinois on July 14, 2015.  A true and correct copy of the Hayes Complaint is attached as Exhibit 3.

41.     The Hayes Complaint alleges that the underlying plaintiffs entered an agreement with BRCI to donate their deceased husband/father's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiffs.  Hayes Cmplnt., ¶¶ 39, 41.

42.     The Hayes Complaint alleges that BRCI represented to the underlying plaintiffs that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Hayes Cmplnt., ¶ 39.

43.     The Hayes Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedent's body would be used with the intent to defraud plaintiffs.  The Hayes Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI. Hayes Cmplnt, ¶ 25; Count IV, ¶ 45.

44.     The Hayes Complaint alleges the following counts against BRCI and other defendants:

- Count I: Intentional infliction of emotional distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud;
- Count V: Violation of the Illinois Consumer Fraud Act; and
- Count VI: Civil conspiracy.

***Banas, et al. v. Biological Resource Center of Illinois, LLC, et al.*, Case No. 2015 L 00574 (Will Cnty., IL Aug. 6, 2015) (the "Banas Complaint")**

45.     The Banas Complaint was filed against BRCI, among others, in the Circuit Court of Will County, Illinois on August 6, 2015.  A true and correct copy of the Banas Complaint is attached as Exhibit 4.

46.     The Banas Complaint alleges that the underlying plaintiffs entered an agreement with BRCI to donate their deceased mother's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiffs.  Banas Cmplnt., ¶¶ 33, 35.

47.     The Banas Complaint alleges that BRCI represented to the underlying plaintiffs that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Banas Cmplnt., ¶ 34.

48. The Banas Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedent's body would be used with the intent to defraud plaintiffs. The Banas Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI. Banas Cmplnt., ¶ 21; Count IV, ¶ 39.

49. The Banas Complaint alleges the following counts against BRCI and other defendants:

- Count I: Intentional infliction of emotional distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud;
- Count V: Violation of the Illinois Consumer Fraud Act; and
- Count VI: Disposition of Remains Act.

**Beecher, et al. v. Biological Resource Center Inc., et al., Case No. CV2015-013391 (Maricopa Cnty., AZ Dec. 7, 2015) (the "Beecher Complaint")**

50. The Beecher Complaint was filed against BRCI, among others, in the Superior Court of Maricopa County, Arizona on December 7, 2015. A true and correct copy of the Beecher Complaint is attached as Exhibit 5.

51. The Beecher Complaint alleges that the underlying plaintiffs entered agreements with BRCI to donate their deceased family members' bodies to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiffs. Beecher Cmplnt., ¶¶ 47, 50.

52. The Beecher Complaint alleges that BRCI represented to the underlying plaintiffs that the bodies of the deceased would be treated with dignity and respect, and that the bodies would not be dismembered and/or sold for profit. Beecher Cmplnt., ¶ 48.

53.     The Beecher Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedents' bodies would be used with the intent to defraud plaintiffs.  The Beecher Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI.  Beecher Cmplnt., ¶¶ 52, 66.

54.     The Beecher Complaint alleges the following counts against BRCI and other defendants:

- Count I: Intentional infliction of emotional distress;
- Count II: Mishandling of dead bodily remains;
- Count III: Common law fraud;
- Count IV: Violation of Consumer Fraud Acts;
- Count V: Civil conspiracy;
- Count VI: Breach of contract;
- Count VII: Punitive damages;
- Count VIII: Racketeering;
- Count IX: Negligent misrepresentation; and
- Count X: Aiding and abetting.

***Sisemore v. Biological Resource Center of Illinois, LLC*, Case No. 2016 L 001330 (Cook Cnty., IL Feb. 8, 2016) (the "Sisemore Complaint")**

55.     The Sisemore Complaint was filed against BRCI in the Circuit Court of Cook County, Illinois on February 8, 2016.  A true and correct copy of the Sisemore Complaint is attached as Exhibit 6.

56.     The Sisemore Complaint alleges that the underlying plaintiff entered an agreement with BRCI to donate her deceased husband's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiff.  Sisemore Cmplnt., ¶¶ 15, 17.

57.    The Sisemore Complaint alleges that BRCI represented to the underlying plaintiff that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Sisemore Cmplnt., ¶ 15.

58.    The Sisemore Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiff regarding how the decedent's body would be used with the intent to defraud plaintiff.  The Sisemore Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiff entered with BRCI. Sisemore Cmplnt., Count IV, ¶ 21; Count V, ¶ 27.

59.    The Sisemore Complaint alleges the following counts against BRCI:

- Count I: Intentional infliction of emotional distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud; and
- Count V: Violation of the Illinois Consumer Fraud Act.

***Rasinski v. Biological Resource Center of Illinois, LLC, et al.* Case No. 2016 L 007040 (Cook Cnty., IL Jul. 15, 2016) (the "Rasinski Complaint")**

60.    The Rasinski Complaint was filed against BRCI, among others, in the Circuit Court of Cook County, Illinois on July 15, 2016.  A true and correct copy of the Rasinski Complaint is attached as Exhibit 7.

61.    The Rasinski Complaint alleges that the underlying plaintiff entered an agreement with BRCI to donate her deceased brother's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiff.  Rasinski Cmplnt., ¶¶ 38, 40.

62.    The Rasinski Complaint alleges that BRCI represented to the underlying plaintiff that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Rasinski Cmplnt., ¶ 38.

12

63. The Rasinski Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiff regarding how the decedent's body would be used with the intent to defraud plaintiff. The Rasinski Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiff entered with BRCI. Rasinski Cmplnt., ¶ 43; Count IV, ¶ 44.

64. The Rasinski Complaint alleges the following counts against BRCI and other defendants:

- Count I: Intentional infliction of emotional distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud;
- Count V: Violation of Illinois Consumer Fraud Act; and
- Count VI: Civil conspiracy.

***Berman, et al. v. Biological Resource Center Inc., et al.*, Case No. CV2016-010273 (Maricopa Cnty., AZ Dec. 22, 2016) (the "Berman Complaint")**

65. The Berman Complaint was filed against BRCI, among others, in the Superior Court of Maricopa County, Arizona on December 22, 2016. A true and correct copy of the Berman Complaint is attached as Exhibit 8.

66. The Berman Complaint alleges that the underlying plaintiffs entered an agreement with BRCI to donate their deceased mother's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiffs. Berman Cmplnt., ¶¶ 3, 79.

67. The Berman Complaint alleges that BRCI represented to the underlying plaintiffs that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit. Berman Cmplnt., ¶ 162.

68.     The Berman Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiff regarding how the decedent's body would be used with the intent to defraud plaintiffs.  The Berman Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI. Berman Cmplnt., ¶¶ 1, 171.

69.     The Berman Complaint alleges the following counts against BRCI and other defendants:

- Count I: Violation of Arizona Consumer Fraud Act;
- Count II: Violation of Illinois Consumer Fraud Act;
- Count III: Common law fraud;
- Count IV: Intentional infliction of emotional distress;
- Count V: Intentional mishandling of dead bodily remains;
- Count VI: Civil conspiracy;
- Count VII: Aiding and abetting; and
- Count VIII: Punitive damages.

***Daniels, et al. v. Biological Resource Center of Illinois, LLC*, Case No. 2017 L 001696 (Cook Cnty., IL Feb. 16, 2017) (the "Daniels Complaint")**

70.     The Daniels Complaint was filed against BRCI in the Circuit Court of Cook County, Illinois on February 17, 2017.  A true and correct copy of the Daniels Complaint is attached as Exhibit 9.

71.     The Daniels Complaint alleges that the underlying plaintiffs entered an agreement with BRCI to donate their deceased husband/father's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiffs.  Daniels Cmplnt., ¶ 14; Count I, ¶ 20.

72.     The Daniels Complaint alleges that BRCI represented to the underlying plaintiffs that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Daniels Cmplnt., ¶ 15.

14

73.     The Daniels Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs regarding how the decedent's body would be used with the intent to defraud plaintiffs.  The Daniels Complaint alleges BRCI subsequently illegally sold body parts of the remains in contravention to the agreement plaintiffs entered with BRCI.  Daniels Cmplnt., Count IV, ¶ 20; Count V, ¶ 26.

74.     The Daniels Complaint alleges the following counts against BRCI:

- Count I: Intentional infliction of emotion distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud; and
- Count V: Violation of the Illinois Consumer Fraud Act.

***Van Damme v. Biological Resource Center of Illinois, LLC,*** **Case No. 2017 L 009793 (Cook Cnty., IL Sept. 27, 2017) (the "Van Damme Complaint")**

75.     The Van Damme Complaint was filed against BRCI in the Circuit Court of Cook County, Illinois on September 27, 2017.  A true and correct copy of the Van Damme Complaint is attached as Exhibit 10.

76.     The Van Damme Complaint alleges that the underlying plaintiff entered an agreement with BRCI to donate her deceased son's body to BRCI with the understanding that the remains would be used solely for medical education/research and any unused portion of the remains would be cremated and returned to plaintiff.  Van Damme Cmplnt., ¶ 13; Count I, ¶ 18.

77.     The Van Damme Complaint alleges that BRCI represented to the underlying plaintiff that the body of the deceased would be treated with dignity and respect, and that the body would not be dismembered and/or sold for profit.  Van Damme Cmplnt., ¶ 14.

78.     The Van Damme Complaint alleges that BRCI made false statements and misrepresentations to the underlying plaintiff regarding how the decedent's body would be used with the intent to defraud plaintiff.  The Van Damme Complaint alleges BRCI subsequently

15

illegally sold body parts of the remains in contravention to the agreement plaintiff entered with

BRCI.  Van Damme Cmplnt., ¶ 17; Count IV, ¶ 18.

79.     The Van Damme Complaint alleges the following counts against BRCI:

- Count I: Intentional infliction of emotion distress;
- Count II: Negligent infliction of emotional distress;
- Count III: Wrongful disposition of body;
- Count IV: Common law fraud; and
- Count V: Violation of the Illinois Consumer Fraud Act.

**B.      The Hiscox Policy**

80.     Hiscox issued Allied Healthcare Professional Liability and General Liability

(Claims made basis), Certificate No. MEO1049034.14, with a policy period of June 6, 2014 to

August 5, 2015 to Biological Resource Center of Illinois, LLC and Anatomical Services Inc. (the

"Policy").  A true and correct copy of the Policy is attached as Exhibit 11.

81.     The Policy provides professional liability and general liability coverage on a

claims-made basis with an extended reporting period of August 5, 2015 to August 5, 2017.  The

Policy's retroactive date is June 6, 2008.

82.     Hiscox is currently providing coverage to BRCI for the Underlying Lawsuits

pursuant to Insuring Agreement Section I.A. "Claims Made Professional Liability" of the Policy.

83.     Section VI.A "Limits of Liability and Deductible" of the Policy provides:

> The Limit of Liability shown in Item 4.a. of the Declarations as to
> coverage afforded under Section I.A. of the Policy and applicable to "Each
> **Claim**," is the maximum amount that Underwriters[1] are or can be liable
> for **Damages**, **Claim Expenses** and **Supplemental Payments** for each
> covered **Claim** first made against the **Insured** during the **Policy Period** or
> **Extended Reporting Period**, if applicable, regardless of when such
> payments are made.[2]

84.     Section VI.E provides:

---

[1] References to "Underwriters" in the Policy are synonymous with references to Hiscox in this complaint.
[2] **Bold terms** are bold and defined in the Policy.

All **Claims** based upon or arising out of any and all continuous, repeated or related **Wrongful Acts** or **Accidents** committed or allegedly committed by one or more of the **Insureds** shall be considered a single **Claim** first made against the **Insured** on the date when the first of such **Claims** was first made against and received by the **Insured**, or when notice of such continuous, repeated or related **Wrongful Acts** was first reported to the applicable insurer. If the **Claims** are deemed to have been first made against the **Insured** during this Policy, such will be deemed to be a single **Claim** for all purposes, including but not limited to, the applicability of one Deductible and the Limit of Liability per **Claim** as set forth in Section VI.A. and VI.B. above and in Item 4.a. and 4.b. of the Declarations.

85.     Item 4.a of the Declarations page of the Policy's states that the limit of liability for professional liability is $2,000,000 "Each Claim," and the limit of liability includes "Damages, Claim Expenses, and Supplemental Payments."

86.     The Policy defines "Claim," in relevant part, as: "any notice received by the **Insured** of a demand for **Damages** or for non-monetary relief based on any actual or alleged **Wrongful Act** as to coverage afforded under Section I.A."

87.     The Policy provides the following definition of "Wrongful Act":

Any actual or alleged negligent act, error, omission, breach of duty, **Bodily Injury** or **Personal Injury** committed or alleged to have been committed by the **Insured**, but solely in performance of the **Professional Services** as shown in Item 3. of the Declarations.

88.     Item 3. of the Declarations identifies BRCI's "Professional Services":

Solely in the performance of services as a Willed Body Program and also in the procurement & preparation of anatomical specimens but solely for use in medical/scientific education.

89.     The Policy's defense provision provides, in relevant part, that "Underwriters shall not be obligated to settle any **Claim**, pay any **Damages** or **Claim Expenses**, or continue to defend any **Claim** after the applicable Limit of Liability has been exhausted."

90.     The Policy defines "Claim Expenses," in relevant part, as: "all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on

17

behalf of Underwriters in the investigation, defense, appeal and settlement of a **Claim** against the **Insured**."

C.   **Hiscox's Reservation Of Rights Letters For The Underlying Lawsuits**

91.   On July 1, 2015, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Dixon Complaint subject to a full reservation of Hiscox's rights under the Policy. Hiscox's letter stated that the Dixon Complaint alleged repeated or related Wrongful Acts to those in a potential claim filed by Mike Marrs[3] such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

92.   On August 12, 2015, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Senderak Complaint subject to a full reservation of Hiscox's rights under the Policy. Hiscox's letter stated that the Senderak Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Hayes Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

93.   On August 12, 2015, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Hayes Complaint subject to a full reservation of Hiscox's rights under the Policy. Hiscox's letter stated that the Hayes Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

94.   On September 3, 2015, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Banas Complaint subject to a full reservation of Hiscox's rights under the Policy. Hiscox's letter stated that the Banas Complaint alleged repeated or related Wrongful

---

[3] In March 2015, BRCI notified Hiscox of potential claimant, Mike Marrs, related to the FBI's January 2015 search warrant and subsequent media coverage. On information and belief, Marrs joined the Dixon Complaint.

Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

95.      On January 4, 2016, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Beecher Complaint subject to a full reservation of Hiscox's rights under the Policy.  Hiscox's letter stated that the Beecher Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

96.      On February 23, 2016, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Sisemore Complaint subject to a full reservation of Hiscox's rights under the Policy.  Hiscox's letter stated that the Sisemore Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, Beecher Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

97.      On October 16, 2016, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Rasinski Complaint subject to a full reservation of Hiscox's rights under the Policy.  Hiscox's letter stated that the Rasinski Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, Beecher Complaint, Banas Complaint, Sisemore Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

98.      On April 3, 2017, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Daniels Complaint subject to a full reservation of Hiscox's rights under the Policy.

Hiscox's letter stated that the Daniels Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, Beecher Complaint, Banas Complaint, Sisemore Complaint, Rasinski Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

99.     On April 6, 2017, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Berman Complaint subject to a full reservation of Hiscox's rights under the Policy.  Hiscox's letter stated that the Berman Complaint alleged repeated or related Wrongful Acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, Beecher Complaint, Banas Complaint, Sisemore Complaint, Rasinski Complaint, Daniels Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

100.    On December 20, 2017, Hiscox issued a letter to BRCI agreeing to provide BRCI's defense to the Van Damme Complaint subject to a full reservation of Hiscox's rights under the Policy.  Hiscox's letter stated that the Van Damme Complaint alleged repeated or related Wrongful acts to those in the Dixon Complaint, Senderak Complaint, Hayes Complaint, Beecher Complaint, Banas Complaint, Sisemore Complaint, Rasinski Complaint, Daniels Complaint, and Marrs potential claim such that they will be considered one claim with one deductible and one applicable $2 million limit of liability.

## COUNT I
## LIMIT OF LIABILITY – DECLARATORY JUDGMENT
### ($2 million limit of liability applies to the Underlying Lawsuits.)

101.    Hiscox reasserts and incorporate by reference Paragraphs 1 through 100 as if fully set forth herein.

20

102.     Hiscox is defending BRCI under the professional liability insuring agreement of the Policy.  The limit of liability for professional liability coverage is $2 million "Each Claim." Claim expenses, including defense costs, erode the $2 million "Each Claim" limit of liability for professional liability coverage.

103.     Section VI.E. of the Policy provides that "[a]ll **Claims** based upon or arising out of any and all continuous, repeated or related **Wrongful Acts** or **Accidents** committed or allegedly committed by one or more of the **Insureds** shall be considered a single **Claim**."

104.     A "Wrongful Act" is "any actual or alleged negligent act, error, omission, breach of duty, **Bodily Injury**, or **Personal Injury** committed or alleged to have been committed by the Insured, but solely in the performance of the **Professional Services**" provided by BRCI.

105.     The Policy defines "Professional Services" for BRCI as "[s]olely in the performance of services as a Willed Body Program and also in the procurement & preparation of anatomical specimens but solely for use in medical/scientific education."

106.     Each of the Underlying Lawsuits makes allegations against BRCI that are based upon and/or arise out of BRCI's acts or omissions in providing "Professional Services" as defined by the Policy.

107.     Each of the Underlying Lawsuits alleges that BRCI committed a negligent act, error, and/or omission, and/or breached its duty owed, in the performance of its professional services.

108.     Each of the Underlying Lawsuits alleges that the underlying plaintiffs and/or their respective decedents entered into an agreement with BRCI with the understanding that BRCI would use the decedents' remains solely for medical education/research.

21

109.     Each of the Underlying Lawsuits alleges that BRCI made false statements and misrepresentations to the underlying plaintiffs and/or their respective decedents regarding BRCI's handling and care of the decedents' remains.

110.     Each of the Underlying Lawsuits alleges that BRCI illegally sold the decedents' body parts in contravention of the underlying plaintiff/decedents' agreement with BRCI.

111.     Accordingly, each of the Underlying Lawsuits is based upon and/or arises out of BRCI's continued, repeated, and/or related "Wrongful Acts," as defined by the Policy.

112.     The ten Underlying Lawsuits, therefore, "shall be considered a single **Claim**" under Section VI.E. of the Policy and are subject to the $2 million "Each Claim" limit of liability for professional liability.

113.     Pursuant to the Policy, Hiscox "shall not be obligated to . . .  continue to defend any **Claim** after the applicable Limit of Liability has been exhausted."

114.     Hiscox has paid over $2 million in "Claim Expenses" for the defense of BRCI in the Underlying Lawsuits, which "Claim Expenses" erode the Policy's limit of liability.  As of December 31, 2017, Hiscox has paid 2,185,448.28 in "Claim Expense."

115.     Accordingly, Hiscox exhausted the Policy's $2 million limit of liability applicable to the Underlying Lawsuits.

**WHEREFORE**, Hiscox requests a judgment against BRCI as follows:

i.      Declare Hiscox has expended the $2 million limit of liability in defense of the Underlying Lawsuits;

ii.     Declare Hiscox has no continuing obligation to defend or indemnify BRCI in connection with the Underlying Lawsuits under the Policy; and

iii.    Award Hiscox any other relief that this Court deems just and appropriate.

## COUNT II
## WAIVER – LIMIT OF LIABILITY
### (BRCI waived the right to assert multiple "Each Claim" limits of liability apply.)

116.     Hiscox reasserts and incorporate by reference Paragraphs 1 through 115 as if fully set forth herein.

117.     Hiscox initially notified BRCI that it would defend the Dixon Complaint by letter dated July 1, 2015.

118.     In Hiscox's July 1, 2015 letter, Hiscox informed BRCI that, pursuant to the Policy terms, the Dixon Complaint would be treated as a single claim in conjunction with the Marrs potential claim, and there would be one $2 million "Each Claim" limit of liability applicable under the Policy and only one deductible would apply.

119.     BRCI never notified Hiscox of any objection to Hiscox classifying the Dixon Complaint and the Marrs potential claim, collectively, as a single claim subject to one $2 million limit of liability under the Policy.

120.     Between August 12, 2015 and April 6, 2017, prior to the Van Damme Complaint being filed, Hiscox sent eight additional letters to BRCI after Hiscox received notice of each complaint in the Underlying Lawsuits, wherein Hiscox agreed to fund BRCI's defense subject to a reservation of rights.

121.     In each of the eight subsequent letters, Hiscox informed BRCI that it would treat each Underlying Lawsuit as a single claim in conjunction with the previously filed Underlying Lawsuits, and there would be one $2 million "Each Claim" limit of liability under the Policy applicable to all the Underlying Lawsuits.

122. After receiving the eight subsequent reservation letters from Hiscox, BRCI never notified Hiscox of any objection to Hiscox classifying the Underlying Lawsuits, collectively, as a single claim subject to one $2 million limit of liability under the Policy and one deductible.

123. From July 1, 2015 to April 6, 2017, Hiscox continued to put BRCI on notice that Hiscox was classifying the Underlying Lawsuits, collectively, as a single claim subject to one $2 million limit of liability under the Policy.

124. From July 1, 2015 to April 6, 2017, BRCI never notified Hiscox of any objection to Hiscox classifying the Underlying Lawsuits, collectively, as a single claim subject to one $2 million limit of liability under the Policy nor did BRCI ever pay more than a single deductible for all of the Underlying Lawsuits.

125. From July 1, 2015 to April 6, 2017, BRCI showed no intent to object to or dispute Hiscox classifying the Underlying Lawsuits, collectively, as a single claim subject to one $2 million limit of liability under the Policy.

126. From July 1, 2015 to April 6, 2017, BRCI's conduct exemplified its acquiescence with Hiscox's classification of the Underlying Lawsuits as a single claim subject to one $2 million limit of liability under the Policy.

127. From July 1, 2015 to April 6, 2017, BRCI's conduct was inconsistent with any intent to dispute the limit of liability under the Policy applicable to the Underlying Lawsuits.

128. BRCI has waived its right to assert that it is entitled to more than the $2 million "Each Claim" limit of liability under the Policy for the Underlying Lawsuits, collectively.

**WHEREFORE**, Hiscox requests a judgment against BRCI as follows:

      i.     Declare BRCI waived its right to contest Hiscox applying the Policy's $2 million "Each Claim" limit of liability to the Underlying Lawsuits, collectively;

    ii.    Declare Hiscox has expended the $2 million limit of liability in defense of the Underlying Lawsuits;

    iii.    Declare Hiscox has no continuing obligation to defend or indemnify BRCI in connection with the Underlying Lawsuits under the Policy; and

    iv.    Award Hiscox any other relief that this Court deems just and appropriate.

### COUNT III
### ESTOPPEL – LIMIT OF LIABILITY
**(BRCI is estopped from asserting multiple "Each Claim" limits of liability apply.)**

129.    Hiscox reasserts and incorporate by reference Paragraphs 1 through 128 as if fully set forth herein.

130.    From July 1, 2015 to April 6, 2017, BRCI never represented to Hiscox that BRCI disputed Hiscox classifying the Underlying Lawsuits, collectively, as a single claim subject to one $2 million limit of liability under the Policy.

131.    To the extent that BRCI disputed that the Underlying Lawsuits, collectively, constituted a single claim under the Policy, BRCI concealed this fact from Hiscox.

132.    Other than from communications on behalf of BRCI, Hiscox had no other means of knowing that BRCI's position was that the Underlying Lawsuits constituted more than a single claim under the Policy.

133.    Hiscox reasonably believed that BRCI agreed with and acquiesced to Hiscox's defense of the Underlying Lawsuits as set forth in each of the nine reservation letters Hiscox sent to BRCI on or before April 6, 2017 because BRCI accepted Hiscox's defense as set forth in the nine reservation letters and paid only one deductible under the Policy.

134.    Hiscox reasonably believed that BRCI agreed with Hiscox that the Underlying Lawsuits, collectively, constitute a single claim subject to one $2 million limit of liability under the Policy because BRCI did not object to any of Hiscox's reservation letters.

135. Hiscox reasonably relied upon BRCI's non-objection and/or acquiescence that the Underlying Lawsuits, collectively, constitute a single claim when it agreed to provide BRCI's defense to the Van Damme Complaint.

136. Hiscox agreed to defend the Van Damme Complaint because it classified the Van Damme Complaint as part of the single claim comprised of the nine other Underlying Lawsuits.

137. Hiscox would not have agreed to defend BRCI in the Van Damme Complaint had BRCI not misrepresented its position that the Underlying Lawsuits constitute more than one claim under the Policy, because the Van Damme Complaint was filed outside the Policy period and extended reporting period (which means Hiscox's duty to defend was not triggered by the Van Damme Complaint).

138. Hiscox further reasonably relied upon BRCI's non-objection and/or acquiescence that the Underlying Lawsuits, collectively, constitute a single claim in deciding not to file earlier a declaratory judgment to determine the applicable limit of liability for the Underlying Lawsuits.

139. Hiscox reasonably believed that its obligations to fund the Underlying Lawsuits ended after it exhausted the $2 million limit of liability—as Hiscox had set forth in each reservation letter issued to BRCI.

140. Hiscox has now spent more than $2 million in "Claim Expenses" to defend the Underlying Lawsuits because BRCI, only very recently, informed Hiscox that it believes the Underlying Lawsuits constitute more than a single claim under the Policy.

141. Hiscox will not compromise BRCI's position by unilaterally ceasing to pay for BRCI's defense to the Underlying Lawsuits, and Hiscox's continued defense of the Underlying Lawsuits is to its financial detriment.

142.     Had BRCI not concealed its position from Hiscox for over two years, Hiscox would have filed a declaratory judgment action much earlier to determine the limit of liability applicable to the Underlying Lawsuits.

143.     Hiscox has been prejudiced, and will continue to be prejudiced, if BRCI is permitted to now deny its previous representations and acquiescence that the Underlying Lawsuits, collectively, constitute a single claim under the Policy.

**WHEREFORE**, Hiscox requests a judgment against BRCI as follows:

i.      Declare BRCI is estopped from claiming the Underlying Lawsuits trigger more than the Policy's $2 million "Each Claim" limit of liability;

ii.     Declare Hiscox has expended the $2 million limit of liability in defense of the Underlying Lawsuits;

iii.    Declare Hiscox has no continuing obligation to defend or indemnify BRCI in connection with the Underlying Lawsuits under the Policy;

iv.     Award Hiscox the dollar amount it expended in excess of the $2 million limit of liability in defending the Underlying Lawsuits; and

iv.     Award Hiscox any other relief that this Court deems just and appropriate.


Respectfully submitted,


By:      s/David Cutter
         *Counsel for Lloyd's Syndicate 3624*
         *(Hiscox)*

David Cutter
Matthew Dostal
Clyde & Co US LLP
55 West Monroe Street
Suite 3000
Chicago, IL 60603
+1 312 635 7000