UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LLOYD'S SYNDICATE 3624,<br><br>    Plaintiff,<br><br>    v.<br><br>BIOLOGICAL RESOURCE CENTER<br>OF ILLINOIS, LLC, et al.,<br><br>    Defendants. | Case No. 18-cv-115<br><br>Judge John Robert Blakey |

MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute between Plaintiff Lloyd's Syndicate 3624 (Hiscox) and Biological Resource Center of Illinois, LLC (BRCI). Hiscox is funding BRCI's defense in ten underlying cases in various state courts, all involving the alleged unlawful mishandling and/or sale of human body parts. Hiscox brought this suit seeking a declaratory judgment as to the scope of BRCI's liability coverage and asserting different theories to limit that coverage. [1]. Hiscox has now moved for partial judgment on the pleadings on Count I of its complaint, seeking a declaratory judgment that the Policy's $2 million single "Claim" limit applies to all ten underlying cases, and that it is therefore no longer obligated to provide coverage. For the reasons explained below, this Court grants Hiscox's motion.

I.  Background

   A.  The Underlying Cases

The ten underlying cases all arise from BRCI's alleged mishandling and/or sale of human remains. *See* [1] ¶¶ 22–29. BRCI operated a non-transplant anatomical

1

donation business from 2007 to 2015, during which time it received over 1,000 anatomical donations. [13] at 43.

Hiscox alleges that, in December 2013, the FBI executed a search warrant on an entity named "International Biological, Inc." (ICI), and, based upon that search, discovered that BRCI was ICI's primary body parts supplier. [1] ¶¶ 23–24. Then, in January 2015, the FBI executed a search warrant on BRCI. *Id.* ¶ 25.

After the FBI's raid on BRCI, between 2015 and 2017, various individuals sued BRCI in Illinois and Arizona state courts. *Id.* ¶¶ 29–79. The ten underlying cases are:

- *Dixon, et al. v. Biological Resource Center of Illinois, LLC, et al.*, 2015 CH 8513 (Circuit Court of Cook County, Illinois) [1-1];

- *Senderak, et al. Biological Resource Center of Illinois, LLC, et al.*, 2015 L 007143 (Circuit Court of Cook County, Illinois) [1-2];

- *Hayes, et al. v. Biological Resource Center of Illinois, LLC, et al.*, 2015 L 007144 (Circuit Court of Cook County, Illinois) [1-3];

- *Banas, et al. v. Biological Resource Center of Illinois, LLC, et al.*, 2015 L 00574 (Circuit Court of Will County, Illinois) [1-4];

- *Beecher, et al. v. Biological Resource Center Inc., et al.*, CV2015-013391 (Superior Court of Maricopa County, Arizona) [1-5];

- *Sisemore v. Biological Resource Center of Illinois, LLC*, 2016 L 001330 (Circuit Court of Cook County, Illinois) [1-6];

- *Rasinski v. Biological Resource Center of Illinois, LLC, et al.*, 2016 L 007040 (Circuit Court of Cook County, Illinois) [1-7];

- *Berman, et al. v. Biological Resource Center, Inc., et al.*, 2016-010273 (Superior Court of Maricopa County, Arizona) [1-8];

- *Daniels, et al. v. Biological Resource Center of Illinois, LLC*, 2017 L 001696 (Circuit Court of Cook County, Illinois) [1-9];

2

- *Van Damme v. Biological Resource Center of Illinois, LLC*, 2017 L 009793 (Circuit Court of Cook County, Illinois) [1-10].

Each complaint in the underlying cases alleges that BRCI induced the plaintiffs (or their decedents) to agree to donate the decedents' remains for medical or scientific uses, but that BRCI instead sold, mishandled, and/or desecrated the remains. [1] ¶ 27. Each complaint also alleges that BRCI breached its duties to the underlying plaintiffs to handle the decedents' bodies with respect and to use the remains only for medical or scientific purposes. *Id.* ¶ 28. Each complaint additionally references the FBI's January 2015 raid on BRCI and alleges that the underlying plaintiffs discovered BRCI's purported mishandling of their loved ones' body parts following the raid. [1-1] ¶¶ 11–12; [1-2] ¶¶ 30, 45–46; [1-3] ¶¶ 30, 44; [1-4] ¶¶ 26, 38; [1-5] ¶¶ 43, 52; [1-6] ¶¶ 8, 10; [1-7] ¶¶ 30, 43; [1-8] ¶¶ 3–5; [1-9] ¶¶ 8, 10; [1-10] ¶¶ 8, 17.

### B. The Policy

Hiscox issued a renewal professional liability and general liability policy to BRCI with effective dates of June 6, 2014 to August 5, 2017 (the Policy). [1] ¶ 80; [1-11] at 1, 13. The Policy provides coverage on a claims-made basis. [1] ¶ 81.[1]

The Policy states that the limit of liability for professional liability is $2 million for "Each Claim" and $3 million "in the Aggregate for all Claims." [1-11] at 1. The

---

[1] Claims-made liability policies "limit coverage to claims made during the policy period." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993). Because the first of the underlying cases was filed May 27, 2015, [1] ¶ 30, the 2014-2017 policy is the only one at issue here. [1-11]. While BRCI references other earlier claims-made policies Hiscox issued to it in its Answer, *see* [13] at 43, none of them are relevant to this dispute because their effective dates precede 2015, *see* [26-1]–[26-6].

limit of liability includes "Damages, Claim Expenses, and Supplemental Payments." *Id.* The Policy provides that Hiscox "shall not be obligated to settle any Claim, pay any Damages or Claim Expenses, or continue to defend any Claim after the applicable Limit of Liability has been exhausted." *Id.* at 16.

The Policy contains the following relevant definitions:

> E. Claim means any notice received by the Insured of a demand for Damages or for non-monetary relief based on any actual or alleged Wrongful Act. . . .
>
> F. Claim Expenses means all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of [Hiscox] in the investigation, defense, appeal and settlement of a Claim against the Insured. . . .
>
> Z. Wrongful Act means any actual or alleged negligent act, error, omission, breach of duty, Bodily Injury or Personal Injury committed or alleged to have been committed by the Insured, but solely in the performance of the Professional Services as shown in Item 3 of the Declarations. . . .

*Id.* at 19, 22.

The Policy additionally provides that "All Claims based upon or arising out of any and all continuous, repeated or related Wrongful Acts or Accidents committed or allegedly committed by one or more of the Insureds shall be considered a single Claim. . . ." *Id.* at 23.

### C. The Coverage Dispute

Hiscox is currently funding BRCI's defense in the underlying cases under a reservation of rights. [1] ¶ 22. The parties agree that Hiscox has paid more than $2 million in "Claim Expenses." *Id.* ¶ 114.

4

In January 2018, Hiscox filed a three-count complaint in this Court. [1]. In Count I of its complaint, Hiscox seeks a declaratory judgment that it has no continuing obligation to defend or indemnify BRCI because it has already spent more than $2 million in defense costs. *See id.* ¶¶ 101–15. Hiscox asserts that the underlying cases constitute a single "Claim" under the terms of the Policy, and thus are subject to the policy's $2 million "Each Claim" limit of liability, rather than only the Policy's $3 million aggregate liability limit. *See id.* ¶ 112.

Count II seeks a declaration that BRCI has waived its right to assert that multiple "Each Claim" limits of liability apply based upon BRCI's alleged acquiescence to Hiscox's classification of the complaints as a single "Claim." *Id.* ¶¶ 116–28. Similarly, Count III seeks a declaration that BRCI should be estopped from asserting multiple "Each Claim" limits of liability, and further requests that this Court award Hiscox the amount it has expended in excess of $2 million. *Id.* ¶¶ 129–43.

In March 2018, Hiscox moved for partial judgment on the pleadings as to Count I [15].

## II. Legal Standard

Rule 12(c) permits a party to move for judgment solely upon the pleadings. Fed. R. Civ. P. 12(c); *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007). A motion for judgment on the pleadings "is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court may take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.,* No. 10-cv-

1533, 2011 WL 1196894, at *2 (N.D. Ill. Mar. 29, 2011) (quoting *Cincinnati Ins. Co v. Contemporary Distrib., Inc.,* 2010 No. 09-cv-2250, 2010 WL 338943, at *2 (N.D. Ill. Jan. 26, 2010)). The pleadings consist of the complaint, the answer, and any written instruments attached as exhibits. *Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004).

This Court reviews Rule 12(c) motions under the same standards as a motion to dismiss under Rule 12(b)(6). *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). As such, this Court is required to "draw all reasonable inferences and facts in favor of the non-movant," but "need not accept as true any legal assertions." *Id.*

### III. Analysis

#### A. Illinois Contract Law

The parties agree that Illinois law governs the interpretation of the Policy. [16] at 10; [21] at 9–10.

In Illinois, the interpretation of an insurance contract is a matter of law. *Ace Am. Ins. Co. v. RC2 Corp.*, 600 F.3d 763, 767 (7th Cir. 2010). This Court's primary objective "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777–78 (7th Cir. 2015) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)).

If policy provisions "are clear and unambiguous there is no need for construction and the provisions will be applied as written." *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 843 (7th Cir. 2013) (quoting *U.S. Fire Ins. Co. v. Schnackenberg*,

6

429 N.E.2d 1203, 1205 (Ill. 1981)). The provisions in a "clear and unambiguous" policy "must be given their plain, ordinary, and popular meaning, and the policy will be applied as written, unless it contravenes public policy." *Id.* (quoting *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)).

B.   **The Underlying Cases Constitute A Single "Claim"**

The issue before this Court is whether the underlying cases constitute a single "Claim" under the Policy. If so, they are subject to the Policy's $2 million "Each Claim" limit, rather than the Policy's $3 million aggregate limit.

The relevant language in the Policy provides that "All Claims based upon or arising out of any and all continuous, repeated or related Wrongful Acts or Accidents committed or allegedly committed by one or more of the Insureds shall be considered a single Claim." [1-11] at 23. The Policy defines "Wrongful Act" as "any actual or alleged negligent act, error, omission, breach of duty, Bodily Injury or Personal Injury committed or alleged to have been committed by the Insured, but solely in the performance of the Professional Services." *Id.* at 22.

In its motion, Hiscox argues that the underlying cases should be treated as a single "Claim" under the Policy because they all originate from BRCI's allegedly negligent acts and breaches of duty, and are thus "based upon or aris[e] out of" BRCI's "continuous, repeated, or related Wrongful Acts." [16] at 13–15. BRCI disputes that its alleged conduct was "continuous, repeated or related." [21] at 9–16.

This Court's analysis focuses on the meaning of the word "related." The Seventh Circuit in *Gregory v. Home Insurance Company* addressed whether claims

7

are "related" for the purpose of applying either a single claim or aggregate policy limit. 876 F.2d 602 (7th Cir. 1989). There, the court noted that the common understanding of the term "related" covers a "a very broad range of connections, both causal and logical." *Id.* at 606. It then instructed that, although "[a]t some point" a "logical connection may be too tenuous reasonably to be called a relationship," it needed not impose "such a drastic restriction of the natural scope" of the term. *Id.* While *Gregory* involved Indiana law, the Illinois Court of Appeals has also embraced a concept of relatedness that incorporates both logical and causal connections. *See Cont'l Cas. Co. v. Howard Hoffman & Assocs.*, 955 N.E.2d 151, 162–63 (Ill. App. Ct. 2011).

Given the breadth of the term "related," as interpreted in Illinois and by the Seventh Circuit, this Court agrees with Hiscox that the underlying cases here arise out of BRCI's alleged acts of mishandling decedents' bodies, and that these alleged acts are "related" under the Policy. The underlying complaints vary in their precise wording, but all allege that: (1) BRCI promised to use the decedents' bodies for education and/or scientific research; (2) BRCI made false representations and breached the duty it undertook when it mishandled and/or sold the bodies; and (3) the plaintiffs discovered BRCI's allegedly wrongful conduct following a January 2015 FBI raid. *See* [1-1]–[1-10]. Thus, the underlying cases are all based upon allegations of the same specific course of conduct. This Court finds the underlying cases plainly "related" under the policy terms.

Various persuasive authorities support this Court's finding that a single course of conduct can provide the basis to deem multiple claims "related." *See Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co.*, 393 F. Supp. 2d 693, 707 (E.D. Wis. 2005) (finding 39 underlying suits "clearly 'related'" where they were all based upon the insured's underwriting practice of marketing and selling certain policies as group health insurance); *Cont'l Casualty Co. v. Wendt*, 205 F.3d 1258, 1263–64 (11th Cir. 2000) (multiple suits were "related" because they all alleged a certain course of conduct by an attorney; even though that course of conduct "involved different types of acts," the acts "were tied together because all were aimed at a single particular goal"); *Liberty Ins. Underwriters, Inc. v. Davies Lemmis Raphaely Law Corp.*, 162 F. Supp. 3d 1068, 1078 (C.D. Cal. 2016) (seven different underlying cases constituted a single "claim" where they all arose from a "single course of conduct, a unified policy of making alleged affirmative misrepresentations to investors in order to induce them to invest in commercial real estate."), *aff'd*, 708 F. App'x 374 (9th Cir. 2017).

In its response, BRCI disputes that the underlying cases can be considered a single "Claim" because some variation exists among them. BRCI argues that the underlying cases "challenge different anatomical donations involving different gifting documents executed at different times by different persons involving different witnesses and made under different circumstances." [21] at 1, 13–14. BRCI, however, cites no case law to support its argument that any of these differences (or a combination of some or all of them) means the underlying cases are not "related."

9

This Court rejects BRCI's reasoning. That BRCI may have sold different decedents' body parts at different times, or that it may have executed different gifting agreements with different witnesses under different circumstances, does not make the claims unrelated. Each of the underlying cases alleges a specific course of wrongdoing: BRCI's unauthorized mishandling and/or sale of body parts. In any meaningful sense of the word, these alleged acts of wrongdoing are "related."

BRCI's other argument—that the underlying cases assert different theories of liability—is equally unavailing. *See id.* at 10–11. Again, BRCI cites no authority to support the notion that underlying complaints must assert the exact same legal theories of liability to be considered a single "Claim." Nor could it, as courts have found that claims can be "related" even if they assert different causes of action and arise from different bad acts. *See, e.g.*, *Gregory*, 876 F.2d at 602–06 (class action suit alleging violations of securities laws, RICO, and common law fraud, and another suit alleging professional negligence, were "related"); *In re DBSI, Inc.*, No. 08-12687 PJW, 2011 WL 3022177, at *4 (Bankr. D. Del. July 22, 2011) ("Claims may be related even if they allege different types of causes of action and arise from different acts."); *WFS Fin., Inc. v. Progressive Cas. Ins. Co.*, 232 F. App'x 624, 625 (9th Cir. 2007) (suits alleged "interrelated wrongful acts" where they had a "common basis," even though they were "filed by two different sets of plaintiffs in two different fora under two different legal theories"). Likewise, this Court will not stretch the reading of the word "related" to require the underlying cases to allege the exact same theories of liability.

10

### C. The Policy's Limit Has Been Exhausted

The single "Claim" limit in the Policy is $2 million. [1-1] at 1. And, "Claim Expenses," which include "all reasonable and necessary fees, costs and expenses, including the fees of attorneys and experts, incurred by or on behalf of [Hiscox] in the investigation, defense, appeal and settlement of a Claim against the Insured," erode the Policy's limit. [1-11] at 19.

BRCI admits that Hiscox has paid more than $2 million in "Claim Expenses" in defending the underlying cases. [13] ¶¶ 8, 114. Therefore, because this Court finds that the underlying cases constitute a single "Claim" under the Policy, it also concludes that the Policy's limit is exhausted. Hiscox thus has no further duty to defend or indemnify BRCI under the Policy as to the underlying cases.

### IV. Conclusion

For the reasons explained above, this Court grants Hiscox's motion for partial judgment on the pleadings [15].

Dated: September 19, 2018

                                              Entered:

                                              _____
                                              John Robert Blakey
                                              United States District Judge